DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |  |
|---|---|---|
| GOURMET GALLERY HAVENSIGHT, INC., and GOURMET GALLERY CROWN BAY, INC., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 2018-88 |
| v. | ) ) | |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON subscribing to Policies bearing Certificates numbered PKCLB2483 and PKCLB2484, | ) ) ) ) ) ) | |
| Defendant. | ) ) | |

ATTORNEYS:

**Gordon C Rhea**
Gordon C. Rhea, P.C.
St. Thomas, U.S.V.I.
　　*For Gourmet Gallery Havensight, Inc., and Gourmet Gallery Crown Bay, Inc.,*

**Neal R. Novak**
Novak Law Offices
Chicago, IL
　　*For Certain Underwriters at Lloyd's, London subscribing to Policies bearing Certificates numbered PKCLB2483 and PKCLB2484,*

**Michelle T. Meade**
St. Thomas, U.S.V.I.
　　*For Crown Bay Marina, L.P.*

**ORDER**

**GÓMEZ, J.**

Before the Court is the motion of Crown Bay Marina, L.P., to intervene in this matter.

### I. FACTUAL AND PROCEDURAL HISTORY

Gourmet Gallery Havensight, Inc., ("Gourmet Havensight") and Gourmet Gallery Crown Bay, Inc., ("Gourmet Crown Bay") are gourmet grocery stores that operate in St. Thomas, U.S. Virgin Islands. Gourmet Havensight is located in the Havensight Mall in St. Thomas. Gourmet Crown Bay is located on property which it leases in the Crown Bay Marina in St. Thomas.

Certain Underwriters at Lloyd's, London, ("Underwriters") is a company that underwrites insurance policies.

In or around the spring of 2017, Gourmet Havensight and Gourmet Crown Bay (collectively "Gourmet Gallery") obtained insurance policies from Underwriters. Those policies provided windstorm coverage for Gourmet Gallery's locations and warehouses from March 16, 2017, to March 16, 2018.

On September 6, 2017, Hurricane Irma hit St. Thomas. On or about October 2, 2017, Gourmet Crown Bay and Gourmet Havensight each submitted a written claim to Underwriters, each of which sought compensation for damages that Gourmet Crown Bay and Gourmet Havensight allege that they each had suffered as a

result of Hurricane Irma. Underwriters disputed the appropriate amount to be paid on the claims.

On October 5, 2018, Gourmet Gallery filed the instant three-count complaint against Underwriters. Gourmet Gallery alleges breach of contract, bad faith, and breach of the implied covenant of good faith and fair dealing.

On October 31, 2018, Underwriters filed its answer and affirmative defenses. In its answer, Underwriters also alleges a counterclaim for concealment, misrepresentation or fraud.

Crown Bay Marina, L.P., (the "Marina") owns the property leased by Gourmet Crown Bay. On July 8, 2019, the Marina moved to intervene. In its motion, the Marina argues that it is entitled to a portion of any insurance proceeds that Gourmet Crown Bay may receive from Underwriters.

On July 15, 2019, after reaching a settlement agreement, Gourmet Gallery and Underwriters filed a stipulation of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).

Thereafter, Gourmet Gallery and Underwriters each filed an opposition to the Marina's motion to intervene. The Marina filed a reply to each parties' opposition.

## II.  DISCUSSION

Federal Rule of Civil Procedure 24 ("Rule 24") provides two means by which a prospective plaintiff may intervene in an action: intervention of right and permissive intervention. *See* Fed. R. Civ. P. 24(a)-(b).

### A. Intervention of Right

With respect to intervention of right, Rule 24(a) provides:

> On timely motion, the court must permit anyone to intervene who:
>
> **(1)** is given an unconditional right to intervene by a federal statute; or
>
> **(2)** claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).

"A movant seeking to intervene under Rule 24(a)(2) must satisfy the following requirements: (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter, by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pennsylvania*, 701 F.3d 938, 948 (3d Cir. 2012) (internal quotation marks omitted). "The moving party

. . . bears the burden of establishing the right to intervene, and failure to satisfy any one of the four factors justifies denial of the request." *Pennsylvania Gen. Energy Co., LLC v. Grant Twp.*, 658 F. App'x 37, 40 (3d Cir. 2016).

To qualify as a sufficient interest in the litigation, "the legal interest asserted must be a cognizable legal interest, and not simply an interest 'of a general and indefinite character.'" *Brody v. Spang*, 957 F.2d 1108, 1116 (3d Cir. 1992) (citations omitted).

> In assessing whether a proposed intervenor has stated a legally cognizable claim, it is appropriate in certain cases to conduct a two step examination, separately evaluating whether the applicant has a right to intervene at the merits stage and whether he or she may intervene to participate in devising the remedy.

*Id.*

To determine whether a prospective intervenor's interest will be affected or impaired, courts "consider whether that interest 'is in jeopardy in the lawsuit.'" *Commonwealth of Pennsylvania v. President United States of Am.*, 888 F.3d 52, 59 (3d Cir. 2018) (quoting *Brody*, 957 F.2d at 1122). "It is not sufficient that the claim be incidentally affected; rather, there must be a tangible threat to the applicant's legal interest." *Brody*, 957 F.2d at 1123. Such a threat may result from any significant legal effect on the applicant's interest," such as "a decision's stare decisis effect or a proposed

remedy's impact on the applicant for intervention." *Commonwealth of Pennsylvania*, 888 F.3d at 59 (internal quotation marks omitted).

The adequacy of representation element requires the applicant to demonstrate "'that his interests are not adequately represented by the existing parties.'" *Brody*, 957 F.2d at 1123 (quoting *Hoots v. Pennsylvania*, 672 F.2d 1133, 1135 (3d Cir. 1982)). Inadequate representation can be based on any of three possible grounds: "(1) that although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests; (2) that there is collusion between the representative party and the opposing party; or (3) that the representative party is not diligently prosecuting the suit." *Id.*

### B. Permissive Intervention

With respect to permissive intervention, Rule 24(b) provides that, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." When determining whether to allow permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

Fed. R. Civ. P. 24(b)(3); *see also Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 779 n.6 (3d Cir. 1994) (explaining that, when determining whether permissive intervention is appropriate, "the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties"). When a prospective intervenor "seeks to intervene at a late point in litigation," courts are generally more likely to find that the original parties' rights will be prejudiced. *See, e.g.*, *United States v. Territory of Virgin Islands*, 748 F.3d 514, 524 (3d Cir. 2014).

Determining whether a motion for permissive intervention should be granted is within the discretion of the court. *See Pa. Prison Soc 'y v. Cortes,* 622 F.3d 215, 232 (3d Cir.2010); *see also Acra Turf Club, LLC v. Zanzuccki*, 561 Fed. App'x 219, 221 (3d Cir. 2014) (explaining that the Third Circuit is "reluctant to intrude into the highly discretionary decision of whether to grant permissive intervention" (internal quotation marks omitted)). In determining whether to allow permissive intervention, courts should consider whether the prospective intervenor will add anything to the litigation and whether the prospective intervenor's interests are already adequately represented in the litigation. *See Hoots v. Pennsylvania,* 672 F.2d 1133, 1136 (3d Cir. 1982) (explaining that, "where . . .

the interests of the applicant in every manner match those of an existing party and the party's representation is deemed adequate, the district court is well within its discretion in deciding that the applicant's contributions to the proceedings would be superfluous and that any resulting delay would be 'undue'").

### III. ANALYSIS

#### A. Effect of the Stipulation of Dismissal

Pursuant to Federal Rule of Civil Procedure 41, "the plaintiff may dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A). "The entry of [] a stipulation of dismissal is effective automatically and does not require judicial approval." *First Nat'l Bank v. Marine City, Inc.*, 411 F.2d 674, 677 (3d Cir. 1969); *see also Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 81 n.21 (3d Cir. 1994) ("A court has no authority to disapprove or place conditions on any such dismissal.").

Here, a stipulation of dismissal was filed by Gourmet Gallery on July 15, 2019. *See* Stipulation of Dismissal, ECF No. 80. That stipulation is signed by counsel for Gourmet Gallery and counsel for Underwriters. Because Gourmet Gallery and Underwriters constitute "all parties who have appeared," Fed. R.

Civ. P. 41(a)(1)(A)(ii), in this matter, that stipulation of dismissal was effective automatically to dismiss this case. *See* 8 James Wm. Moore *et al.*, *Moore's Federal Practice* § 41.34[4][b], at 41-113 (3d ed. 2000)(noting that "[a] stipulation [under Fed. R. Civ. P. 41(a)(1)(A)(ii)] filed during the pendency of a motion to intervene is effective to dismiss the action, since the proposed intervenors do not become parties within the meaning of the Rule until their motion is granted.").

Nevertheless, the Marina asks the Court to grant its motion to intervene *nunc pro tunc*, such that the Marina would have been a party to this case prior to the filing of the stipulation of dismissal.[1]

In light of the procedural posture of this matter, the Court must determine whether the stipulation of dismissal deprives it of jurisdiction to consider the Marina's motion to intervene.

Article III of the Constitution limits federal-court jurisdiction to "cases" and "controversies." U.S. Const., Art. III, §2. "To satisfy the Art. III case-or-controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." *Iron*

---

[1] The Marina filed its motion to intervene one week prior to the filing of the stipulation of dismissal.

*Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (internal quotation marks omitted) (citations omitted). "A case becomes moot, however, 'only when it is impossible for a court to grant any effectual relief what-ever to the prevailing party.'" *Id.* (citations omitted). Significantly, a court's "impotence 'to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'" *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).

"Settlement of a plaintiff's claims moots an action." *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992). Here, Gourmet Gallery and Underwriters reached a settlement agreement in this matter after which they filed a stipulation of dismissal. As such, this action is moot. Because a court lacks jurisdiction to review moot cases, *see Rice*, 404 U.S. at 246,

the Court concludes that the stipulation of dismissal entered by the parties has deprived it of jurisdiction to review this case.

Nevertheless, the Marina argues that the mootness of this case does not deprive the Court of jurisdiction to decide its motion to intervene.

In *Harrington v. Sessions (In re Brewer)*, 863 F.3d 861 (D.C. Cir. 2017), Herman Brewer ("Brewer"), as the sole named plaintiff of a putative class consisting of African American deputy U.S. Marshals, brought suit against the U.S. Marshals Service. *Harrington v. Sessions (In re Brewer)*, 863 F.3d 861, 864 (D.C. Cir. 2017). After the district court denied class certification, Brewer petitioned the D.C. Circuit for interlocutory review. *Id.* While the appeal was pending, Brewer settled his individual claims with the Government. *Id.* Thereafter, Brewer filed a stipulation of dismissal in the district court. *Id.* Upon notice of the stipulation, four current and former deputy U.S. Marshals moved to intervene in order to continue pursuing the petition for interlocutory review in the D.C. Circuit. *Id.* They also moved to intervene in the district court in order to appeal the denial of class certification. *Id.* at 867.

The D.C. Circuit found that it had jurisdiction to consider the motion to intervene. *Id.* at 868. It began by explaining

that, beyond the generally recognized rule that a stipulated dismissal is effective automatically to constitute a final judgment, "no opinion details with precision the practical effect of a stipulated dismissal upon a district court's jurisdiction." *Id.* The D.C. Circuit further explained that

> [s]ome Circuits have reasoned the "jurisdiction-stripping" effect of a stipulated dismissal precludes a district court from taking further action on motions made after, or even before, the dismissal. Those decisions suggest that upon the stipulated or voluntary dismissal of the current parties' claims, a court may lack jurisdiction to review a non-party's motion for intervention. *See Marex Titanic*, 2 F.3d at 545-47; *Bond v. Utreras*, 585 F.3d 1061, 1071-72 (7th Cir. 2009); *United States v. Ford*, 650 F.2d 1141, 1142-43 (9th Cir. 1981) (judicially approved voluntary dismissal). *But see Sommers*, 835 F.3d at 513 n.5 (rejecting this position); *State of Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1320-21 (9th Cir. 1997) (same for the effect of a voluntary dismissal by court order under Rule 41(a)(2)).

*Id.* at 869.

At the same time, the D.C. Circuit recognized that "a stipulated dismissal, aside from its immediate effectiveness, is no different in jurisdictional effect from a dismissal by court order: Each resolves all claims before the court, leaving it without a live Article III case or controversy." *Id.*

> The absence of a live controversy, then, not any special feature of a stipulated dismissal, is what deprives the district court of continuing jurisdiction. It follows that any action a court can take despite having dismissed a case as moot, such as substituting an adverse party for a non-adverse party, it can also take following the entry of a stipulated dismissal. . . .

>    Several Circuits have framed the jurisdictional effect of a stipulated dismissal in sweeping terms, but none has suggested that effect is unique to a stipulated dismissal, as opposed to a court-ordered dismissal. Nor is there anything in Rule 41(a)(1)(A)(ii) (stipulated dismissals), or in the remainder of Rule 41 (dismissals in general), that suggests a stipulated dismissal is in any way jurisdictionally unique.

*Id.* (citations omitted). Further, the D.C. Circuit emphasized that "the Supreme Court has repeatedly advised against giving jurisdictional significance to statutory provisions that do not clearly 'speak in jurisdictional terms.'" *Id.* at 870. Thus, the D.C. Circuit concluded that "if a motion to intervene can survive a case becoming otherwise moot, then so too can a motion to intervene survive a stipulated dismissal." *Id.*

The D.C. Circuit recognized that "[i]t is well established that mootness alone does not strip a district (or an appellate) court of jurisdiction to hear a motion to intervene for the purpose of appealing the dismissal of claims pending before the court, provided, of course, the intervenor has an Article III stake sufficient to pursue an appeal." *Id.*

While *Harrington* is not binding on this Court, its conclusion that the Article III standing of a putative intervenor ought to inform the Court is persuasive. *Cf. Diamond v. Charles*, 476 U.S. 54, 68 (1986) (noting that "an intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by

the intervenor that he fulfills the requirements of [Article] III"); *see generally Sam Fox Pub. Co. v. United States*, 366 U.S. 683, 687-88 (1961) (explaining that, where a proposed intervenor's motion to intervene was denied, "the controlling question on the issue of jurisdiction . . . is whether the appellants were entitled to intervene in these proceedings as 'of right'").

As such, the Court will next address whether the Marina has "an Article III stake sufficient," *Harrington*, 863 F.3d at 870, to otherwise survive the mootness of the claims between Gourmet Gallery and Underwriters. *Cf. Bond v. Utreras*, 585 F.3d 1061, 1072 (7th Cir. 2009) (concluding that, where a case had been dismissed such that no live Article III case or controversy existed between the parties, the proposed intervenor was "required to independently establish his standing before being permitted to intervene").

**B. Standing**

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The "prudential standing

rule . . . normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Warth*, 422 U.S. at 509. "[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* at 499.

In *Federal Kemper Insurance Co. v. Rauscher*, 807 F.2d 345 (3d Cir. 1986), the Third Circuit considered whether injured parties have standing in a declaratory judgment action in the insurance coverage context. In that case, the insured driver, Rauscher, and his two passengers were involved in an automobile accident, leaving one passenger permanently disabled. *Id.* at 347. The insurance company, Kemper, filed a complaint seeking a declaratory judgment against Rauscher and his passengers. Kemper asked the district court to construe Rauscher's insurance policy as not covering the accident. *Id.* at 348. After Rauscher failed to answer, Kemper brought a motion seeking default judgment against Rauscher only. The district court not only entered default judgment against Rauscher but simultaneously entered judgment against the passengers. The district court did so on the basis of its conclusion that the rights of the passengers

were completely dependent upon, and derivative of, any rights that Rauscher had. *Id.* at 349.

The Third Circuit reversed, holding that a "case or controversy" existed between the insurance company and the injured passengers and, therefore, the passengers had standing to defend the declaratory judgment despite Rauscher's absence. *Id.* at 353-54. In reaching that conclusion, the Third Circuit noted that the critical determination for standing to sue in this scenario was "whether the rights of an injured party within the procedural context of a declaratory judgment action are truly derivative of the rights of the co-defendant insured." *Id.* at 351. If the rights of the injured party are derivative and not independent, then there would be no "case or controversy," as there would be no "real dispute" between the injured party and the insurance company. *Id.* The Third Circuit recognized that a "case or controversy" must exist between the insurance company and the injured third party under such circumstances. The Third Circuit noted that the insurance company brought the declaratory judgment action against the injured third party in the hope of attaining a binding judgment against both the insured and the injured party. *Id.* at 354. Taking a "realistic" approach, the Third Circuit concluded that the injured party has an independent right to present its case upon the ultimate issues,

apart from that of the insured, because "'in many of the liability insurance cases, the most real dispute is between the injured third party and the insurance company, not between the injured and oftentimes impecunious insured.'" *Id.*

The claims pending before this Court concern the extent of coverage under the windstorm policies Underwriters issued to Gourmet Gallery. The Marina claims a right to the insurance proceeds at issue. That claim is grounded in a lien allegedly established by the lease contract between the Marina and Gourmet Crown Bay. The Marina does not assert any independent claim against Underwriters. Moreover, the Marina does not allege that it has suffered any injury covered by the insurance policy that Underwriters issued to Gourmet Crown Bay. Significantly, the Marina admits that it "does not seek to recover proceeds independent of its derivative right and lienholder status." *See* Reply to Defs.' Op. to Crown Bay Marina, L.P.'s Mot. to Intervene at 2, ECF No. 95. As such, there is no "real dispute" between Underwriters and the Marina. Indeed, the Marina appears to have a landlord-tenant dispute solely with Gourmet Crown Bay. Given these circumstances, the Court concludes that the Marina does not have an Article III stake sufficient to survive the mootness of this matter.

As such, the Court finds that the Marina's motion to intervene is moot.

The premises considered, it is hereby

**ORDERED** that, in accordance with the stipulation of dismissal entered by the parties, the Clerk of Court shall **CLOSE** this case; and it is further

**ORDERED** that all pending motions are **MOOT.**

S\_____
**Curtis V. Gómez
District Judge**